IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MARCUS SCIROCCO,** *et al.*                                                                   **PLAINTIFFS**

**V.**                                                  **CIVIL ACTION NO. 5:13-CV-128-KS-MTP**

**FORD MOTOR COMPANY**                                                              **DEFENDANT**

### AMENDED MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** Defendant's Motion for Summary Judgment [43].

### I. BACKGROUND

This is a product liability case. The product at issue is a 2010 Ford Fusion automobile. Plaintiffs, Marcus and Summer Scirocco, allege that Mrs. Scirocco was driving the car downhill when she heard a grinding noise. Plaintiffs claim that the car suddenly decelerated to a complete stop, throwing Mrs. Scirocco forward and injuring her neck, shoulder, and face. The allege that a defect in the car's powertrain control module caused the accident.

Plaintiffs filed this lawsuit and asserted claims of negligence, breach of contract, breach of implied and express warranties, and strict liability. Defendant filed a Motion for Summary Judgment [43], which the Court now addresses.

### II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc.*

*v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

*A.  Subsumed Claims*

The Mississippi Product Liability Act ("MPLA") governs "any action for damages caused by a product, including but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty . . . ." MISS. CODE ANN. 11-1-

63. Therefore, as Plaintiffs' claims of negligence,[1] and breach of implied warranties,[2] and strict liability[3] arise from damages caused by an allegedly defective product, they are subsumed by the MPLA.

Defendant also argued that Plaintiff's breach of contract claim is subsumed by the MPLA, but it failed to cite any legal authority in support of this argument. Regardless, the parties did not address any alleged breach of contract in briefing, and the Court does not know enough about the claim to determine whether it is subsumed by the MPLA.

*B.    MPLA*

Before the Court can analyze Plaintiffs' MPLA claim, it must decipher the nature of the claim. In their Amended Complaint [12], Plaintiffs did not state whether the alleged defect was a design defect or a manufacturing defect, and they did not specify the nature of the defect. Regardless, Plaintiffs apparently identified two alleged defects during discovery.

First, Defendant implemented a customer satisfaction program – "CSP 10B15" – in response to potential wear on the transmission valves. The wear has occurred in

---

[1] *See Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 602 (N.D. Miss. 2013); *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 844-45 (S.D. Miss. 2010).

[2] *See Murray v. GM, LLC*, 478 F. App'x 175, 180 (5th Cir. 2012); *Thomas v. FireRock Products, LLC*, 40 F. Supp. 3d 783, 791 n. 9 (N.D. Miss. 2014); *Gross v. Balt. Aircoil Co.*, No. 3:13-CV-423-DPJ-FKB, 2014 U.S. Dist. LEXIS 37490, at *24 (S.D. Miss. Mar. 21, 2014).

[3] *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011).

less than 2% of vehicles with the transmission found in Plaintiffs' car, and it manifests itself by hard downshifts. As a preventive measure, Defendant issued CSP 10B15, which required mechanics to update the software for the vehicles' powertrain control module ("PCM") and perform a load test, which would determine whether the vehicle had experienced enough valve wear to impact performance.

In briefing, Plaintiffs admitted that their car did not have the valve wear issue addressed in CSP 10B15. Therefore, to the extent Plaintiffs intended to assert an MPLA claim arising from this issue, the Court finds that they abandoned the claim. Regardless, it is undisputed that their car passed the load test, indicating that the transmission valves were not worn enough to cause hard downshifts.

The second alleged defect is a downshift problem addressed in a technical service bulletin ("TSB"), TSB 09-18-03 [48-11], issued by Defendant. The TSB provides, in pertinent part:

> Some . . . 2010 Fusion . . . vehicles built on or before 8/2/2009 and equipped with an automatic transmission may exhibit harsh 3-1 or 2-1 rolling stop downshift or downshift hesitation during throttle tip-in/tip-out 3-4-2 downshift maneuver at vehicle speeds between 20-40 MPH . . . . . There is a new calibration that will improve the transmission downshift maneuver under these conditions . . . .

Defendant directed mechanics to "[r]eprogram the powertrain control module (PCM) to the latest calibration using IDS release 62.11 and higher." In other words, as with the valve wear issue, Defendant directed mechanics to fix the downshift problem by upgrading the PCM software. In briefing, Plaintiffs argue that their vehicle suffered from this defect, and they describe it as both a design defect and a manufacturing

4

defect.

To succeed on their design and manufacturing defect claims, Plaintiffs must meet the MPLA's evidentiary requirements:

(a) The manufacturer, designer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:

   (i) 1. The product was defective because it deviated in a material way from the manufacturer's or designer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

   *** 

   3. The product was designed in a defective manner, . . . and

   (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

   (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

   ***

(f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer, designer or product seller shall not be liable if the claimant does not prove by a preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:

   (i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

   (ii) The product failed to function as expected and there existed a feasible design alternative that would have to a

5

>reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

MISS. CODE ANN. 11-1-63(a), (f).

Defendant first argues that Plaintiffs can not prove the existence of a defect because they do not have an expert witness. Indeed, Mississippi's federal courts have consistently held that plaintiffs can not prove the existence of a product defect without expert testimony.[4] Expert testimony is particularly important in a "highly technical" case like this one. *See Cothren*, 798 F. Supp. 2d at 782. Therefore, Plaintiffs have not provided sufficient evidence to prove the existence of a design or manufacturing defect.

Alternatively, Defendant argues that Plaintiffs failed to provide any evidence that their car was actually defective, or that an alleged defect caused their injuries. In

---

[4]*See, e.g. Harris v. Stryker Spine*, 39 F. Supp. 3d 846, 850 (S.D. Miss. 2014); *Cothren v. Baxter Healthcare Corp.*, 798 F. Supp. 2d 779, 782 (S.D. Miss. 2011); *Childs v. GMC*, 73 F. Supp. 2d 669, 671 (S.D. Miss. 1999); *Hammond v. Coleman Co.*, 61 F. Supp. 2d 533, 542 (S.D. Miss. 1999), *aff'd*, 209 F.3d 718 (5th Cir. 2000); *Wallace v. Ford Motor Co.*, No. 3:11-CV-567-CWR-FKB, 2013 U.S. Dist. LEXIS 91164, at *4 (S.D. Miss. June 28, 2013); *Runnels v. Tahsin Indus. Corp., USA*, No. 3:11-CV-106-CWR-LRA, 2013 U.S. Dist. LEXIS 179701, at *3 (S.D. Miss. Dec. 23, 2013); *Taylor v. Otis Elevator Co.*, 2012 U.S. Dist. LEXIS 103377, at *8-*9 (S.D. Miss. July 25, 2012); *Thomas v. Kyocera Wireless Corp.*, No. 2:11-CV-9-A-S, 2012 U.S. Dist. LEXIS 13052, at *13-*14 (N.D. Miss. Feb. 3, 2012); *McIntosh v. Nissan N. Am., Inc.*, No. 3:07-CV-60-DPJ-LRA, 2008 U.S. Dist. LEXIS 91972, at *8 (S.D. Miss. Oct. 28, 2008); *see also Moss v. Batesville Casket Co.*, 935 So. 2d 393, 404-06 (Miss. 2006) (noting plaintiff's failure to provide expert testimony re: the existence of a defect among other reasons that product liability claim failed); *but see Guy v. Crown Equip. Corp.*, 394 F.3d 320, 331 (5th Cir. 2004) (observing that the MPLA does not explicitly require expert testimony to prove a design defect, but ultimately declining to address whether expert testimony is necessary).

response, Plaintiffs argue that Defendant's TSB 09-18-03 [48-11] provides circumstantial evidence that their car was defective and that the defect caused their injuries. Plaintiffs argue that the TSB establishes that some 2010 Ford Fusions with automatic transmissions would experience the same performance issues they allege caused their injuries, creating genuine disputes of material fact regarding the existence of a defect and causation.

However, the TSB does not demonstrate that Plaintiff's vehicle had the PCM defect. *Id.* at 783; *Rutledge v. Harley-Davidson Motor Co.*, No. 4:08-CV-65-DPJ-JCS, 2009 U.S. Dist. LEXIS 49003, at *8 (S.D. Miss. June 10, 2009). All the TSB establishes is that *some* 2010 Ford Fusions have a PCM calibration problem that causes hard downshifts. The record here contains no evidence that Plaintiffs' vehicle had the defect at the time of the accident, or at the time it left Defendant's control. Likewise, the record contains no evidence demonstrating what version of the PCM software Plaintiffs' vehicle had at the time of the accident. Plaintiffs essentially speculate that their vehicle had the PCM calibration defect because of Mrs. Scirocco's accident, but "the mere fact that the accident occurred and plaintiff was injured of itself alone constitutes no evidence of any negligence or breach of other duty" by a product's manufacturer or designer. *Creel v. GMC*, 233 So. 2d 105, 109 (Miss. 1970); *see also Thomas v. Ford Motor Co.*, No. 2:04-CV-187-P-A, 2005 WL 3481415, at *1 (N.D. Miss. 2005).

For these reasons, the Court concludes that Plaintiffs have not presented sufficient evidence to create a genuine dispute of material fact as to the elements of

their MPLA claim. Specifically, they failed to provide any evidence that their vehicle was defective, or that an alleged defect caused their injuries.

## C.     *Breach of Express Warranty*

To survive summary judgment on their express warranty claim, Plaintiffs must present evidence that, at the time it left Defendant's control, the car "breached an express warranty or failed to conform to other express factual representations upon which [they] justifiably relied in electing to use" it. MISS. CODE ANN. § 11-1-63(a)(i)(4). "[A]n express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product. Fault does not need to be shown to establish a breach. The plaintiff need only show that the product did not live up to its warranty." *Forbes v. GMC*, 935 So. 2d 869, 876 (Miss. 2006) (quoting *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682, 687 (N.D. Miss. 2002), *aff'd*, 361 F.3d 862 (5th Cir. 2004)).

Plaintiffs allege that the car's sudden deceleration breached an express warranty in the owner's manual that "the transmission was designed to provide smooth quiet operation." Among other things, Defendant argues that Plaintiffs' express warranty claim fails because Plaintiffs provided no evidence that they read or relied on the owners manual.

According to the Mississippi Supreme Court, "[i]t is still possible to rely on assertions" in an owner's manual "without having actually read them." *Forbes v. GMC*,

935 So. 2d 869, 875 (Miss. 2006).[5] There must be some evidence, however, that the alleged warranty "became a part of the basis" for the plaintiff's decision to purchase and/or use the product. *Id.* at 876. In other words, the plaintiff must rely on the alleged representation. *See* MISS. CODE ANN. 11-1-63(a)(i)(4); *Previto v. Ryobi N. Am., Inc.*, 1:08-CV-177-HSO-JMR, 2011 WL 135673, at *9 (S.D. Miss. Jan. 14, 2011).

Here, Plaintiffs failed to direct the Court to any evidence that they relied upon the representation from the owner's manual – or any other representation – when they decided to purchase and/or use the car. In fact, Plaintiffs did not even address the MPLA's requirement of justifiable reliance. *See* MISS. CODE ANN. 11-1-63(a)(i)(4). Therefore, the Court grants Defendant's motion for summary judgment as to Plaintiffs' express warranty claim.

## IV. CONCLUSION

For the reasons above, the Court **grants** Defendant's Motion for Summary

---

[5]In dissent, Justice Dickinson observed:

It is uncontested that the Forbeses never read their owner's manual. Clearly, they cannot now claim their decision to "use the product" was influenced in any way by the unread warranty. For the Forbeses to claim they relied on a warranty about which they didn't know defies logic. . . . [W]e have no constitutional power or right to refuse to enforce a perfectly valid and constitutional restriction placed by the legislature on products liability litigation. The statute clearly requires reliance by the purchaser, and there can be no reliance on a statement about which the plaintiff knows nothing.

*Forbes*, 935 So. 2d at 882-83 (Dickinson, J., dissenting); *see also Palmer v. Volkswagen of Am., Inc.*, 904 So. 2d 1077, 1084 (Miss. 2005) ("The presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages.").

Judgment [43] as to Plaintiffs' negligence, breach of implied warranty, strict liability, and breach of express warranty claims.

Although Plaintiffs asserted a breach of contract claim in the Amended Complaint [12], the parties did not address it in briefing. Accordingly, the Court is uncertain whether there remain any disputed claims for trial. The Court directs the parties' counsel to confer and contact the undersigned judge's chambers to clarify the status of Plaintiffs' breach of contract claim.

SO ORDERED AND ADJUDGED this 21st day of May, 2015.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE